UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ANN ZAFFERANO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:17-cv-01165-JDP<br><br>ORDER ON SOCIAL SECURITY APPEAL<br><br>ECF No. 1 |

**I.  INTRODUCTION**

Plaintiff Linda Ann Zafferano has filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability and disability insurance benefits. ECF No. 1. The case has been submitted on the parties' briefs. The court will remand for further proceedings.

**II.  THE DISABILITY EVALUATION STANDARD**

A person has a "disability" under the Social Security Act if the claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The physical or mental impairment must be an anatomical, physiological, or psychological

1

abnormality "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D). The impairment must be sufficiently severe that the claimant cannot perform her previous work and cannot—considering her age, education, and work experience—engage in substantial gainful work that exists in the national economy. *See id*. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must consider the combined effect of all the claimant's impairments, regardless of whether any individual impairment is on its own severe enough to constitute a disability. *See id*. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Social Security Administration has a sequential, five-step process for evaluating a claimed disability. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(f). If a claimant is determined to be either disabled or not disabled at any step in the sequence, the analysis ceases without a consideration of subsequent steps. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers whether the claimant has a severe impairment or combination of impairments that significantly limit his ability to perform basic work activities. *See id*. §§ 404.1520(c), 416.920(c). At step three, the Commissioner determines whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"). *See id*. §§ 404.1520(d), 416.920(d). At step four, the Commissioner determines whether the claimant can perform his or her past jobs. *See id*. §§ 404.1520(f), 416.920(f). At step five, the Commissioner determines whether the claimant can perform other work that exists in significant numbers in the national economy. *See id*. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### III. PROCEDURAL BACKGROUND

Zafferano has filed an application for a period of disability and disability insurance benefits beginning April 19, 2011. AR 20.[1] The decision of the Administrative Law

---

[1] All "AR" citations refer to the administrative record. ECF No. 8.

2

Judge ("ALJ") to deny benefits on April 20, 2016 became the final decision of the Commissioner on June 30, 2017 when the Commissioner's Appeals Council denied Zafferano's request to review the appeal. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481. The ALJ's decision is now before this court for review.

### IV. THE COMMISSIONER'S FINAL DECISION

The ALJ found that Zafferano was not disabled. AR 32. At step one, the ALJ found that Zafferano had engaged in substantial gainful activity since the alleged onset date of her disability, April 19, 2011. AR 22-23. Nonetheless, "in order to give her the benefit of any doubt," the ALJ proceeded with the sequential analysis of her claim. AR 23. The ALJ then found severe impairments at step two: "anxiety disorder; substance addiction disorder (alcohol) (Ex. 1F, 9F, 14F); dysthymia vs. bipolar disorder (Ex. 9F); personality disorder (20 CFR 404.1520(c))." AR 24. At step three, the ALJ found that Zafferano's impairments, "including the substance use disorder, meet sections 12.04, 12.06, 12.08, and 12.09 of 20 CFR Part 404, Subpart P, Appendix." AR 23-24. The ALJ found that if plaintiff stopped abusing alcohol, she would continue to have severe impairments, but those impairments would no longer meet or equal any per se disabled listed impairments. AR 24-25.

Between step three and step four, the ALJ determined that if Zafferano ceased her substance abuse, she would have the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: work limited to simple, routine, and repetitive tasks; can work in a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting; can have only occasional interaction with the general public.

AR 26. In reaching this determination, the ALJ discounted the medical opinion of Dr. Susan Day, Zafferano's treating psychologist:

> Limited weight is given the November 2011, December 2013, January 2013, March 2015, June 2015, February 2015 and March 2016 medical source statements completed by Dr. Day. Ex 5F, 7F-8F, 11F, 17F, 19F-20F. Dr. Day reported treating the claimant since June 2009 and that as a result of her mental impairments she

3

> was unable to handle stress or work. However, the determination of
> disability is reserved to the Commissioner and these opinions lack
> analysis or explanation to support them. To the contrary, they
> appear to be based on subjective opinions rather than the limited,
> objective treatment record and are inconsistent with both the limited
> longitudinal medical evidence of record, discussed above, and the
> claimant's activities of daily living and earnings history, which, as
> discussed previously, show she in fact was capable of work and did
> work in 2013. Ex. 3D/2. Furthermore, greater weight has been
> given the opinions of the reviewing and examining medical experts,
> discussed previously.

AR 31.

At step four, the ALJ found that if Zafferano stopped her substance abuse, she would still be unable to perform past relevant work. AR 30. The ALJ therefore proceeded to step five, where—after assuming that Zafferano ceased the substance abuse and considering her age, education, work experience, and RFC—he concluded that "there would be a significant number of jobs in the national economy that the claimant could perform." AR 30. The ALJ thus concluded that Zafferano was not disabled as defined in the Social Security Act. AR 32.

## V. STANDARD OF REVIEW

A district court will set aside the Commissioner's final decision denying benefits only if that decision is either (1) not supported by substantial evidence or (2) based on a legal error. *See* 42 U.S.C. § 405(g); *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance; [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether a decision of the Commissioner was based on substantial evidence, the court reviews the "entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citations omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's final

decision, the court may not substitute its judgment for that of the Commissioner—and thus affirms under the substantial evidence standard. *Id.*; *see Revels*, 874 F.3d at 654 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). However, in evaluating whether a decision is supported by substantial evidence, the court reviews only the reasons provided by the Commissioner in the disability determination and may not affirm based on a ground upon which the Commissioner did not rely. *See Revels*, 874 F.3d at 654. The court will find legal error if it concludes that the Commissioner applied the wrong legal standard. *See Wellington v. Colvin*, 2016 WL 224184, at *5 (E.D. Cal. Jan. 19, 2016), *aff'd sub nom. Wellington v. Berryhill*, 878 F.3d 867 (9th Cir. 2017).

**VI.   DISCUSSION**

    **A. Analysis**

Zafferano argues that the ALJ committed three errors: "A) The ALJ Improperly Rejected The Opinions of Plaintiff's Treating and Examining Providers; B) The ALJ Improperly Rejected Plaintiff's Testimony; C) The ALJ's Step-Five Finding Is Not Supported By Substantial Evidence." ECF No. 13 at 3-4. The court will first consider plaintiff's argument that the ALJ improperly rejected the opinions of plaintiff's treating providers.

The weight given medical opinions depends in part on whether the opinions are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to become acquainted with and observe the patient as an individual. *See id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different independent clinical findings, the ALJ may resolve the conflict. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *See*

5

*Lester*, 81 F.3d at 830. In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); *Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *See Lester*, 81 F.3d at 831.

Additionally, before rejecting the medical opinion of a treating physician, an ALJ is required to consider factors laid out in 20 C.F.R. § 404.1527(c). The regulations provide:

> When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2). The required factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the extent to which the opinion is supported by evidence, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist. *Id.* The omission of this analysis is legal error, and post hoc rationalizations for the omission do not alleviate the problem. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[Courts] are constrained to review the reasons the ALJ asserts.").

Here, the ALJ did not apply all the required factors to Dr. Day's opinion, and the failure to do so amounts to legal error. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that outright rejection of a medical opinion without applying the § 404.1527(c)(2) factors "alone constitutes reversible legal error."). The ALJ failed to discuss the frequency of examination, the nature and extent of the treatment relationship, and whether the medical source is a specialist. *See* 20 C.F.R. § 404.1527(c)(2). These factors were relevant in this case: Dr. Day, a specialist, saw Zafferano on a bi-weekly basis and the treatment relationship was intensive. *See* AR 437.

Before engaging in harmless error analysis, we will review the reasons provided by the ALJ for rejecting Dr. Day's opinion. Since the doctor's opinion was contradicted, *see* ECF No.

26-30, it was subject to rejection for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. The ALJ stated that he discounted Dr. Day's opinion because (1) "the determination of disability is reserved to the Commissioner"; (2) Dr. Day's "opinions lack analysis or explanation to support them . . . [and] appear to be based on subjective opinions rather than the limited, objective treatment record"; and (3) Dr. Day's opinions "are inconsistent with both the limited longitudinal medical evidence of record, discussed above, and the claimant's activities of daily living and earnings history, which, as discussed previously, show she in fact was capable of work and did work in 2013." AR 31.

The ALJ's first ground for discounting Dr. Day's opinion—"the determination of disability is reserved to the Commissioner," AR 31—is an accurate statement of law,[2] but it cannot serve as a basis for discounting Dr. Day's opinion in its entirety. Zafferano's records from Dr. Day contain a multitude of medical opinions, reflecting years of treatment. *See* AR 406-23; 429-37; 478-82; 484-87; 504, 507-12. While Dr. Day has repeatedly opined on the determination of disability—that Zafferano should not return to work because the attendant stress exacerbates her symptoms and leads to hospitalization, *see* AR 375, 408, 478, 507, 511-12—Dr. Day's decision to opine on Zafferano's ability to work does not provide a basis for discounting *all* of her medical opinions. To the contrary, as provided in the internal agency guidance document on which the ALJ relied in discounting plaintiff's claim, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling 96-5p.

The second proffered basis for discounting Dr. Day's opinions—that they "lack analysis or explanation to support them . . . [and] appear to be based on subjective opinions rather than the limited, objective treatment record"—is no more convincing. AR 31. At the time of the ALJ's decision, Dr. Day had seen Zafferano twice per month for one-hour psychotherapy and cognitive behavioral therapy sessions over the course of seven years. AR 437; *see also* AR 485-87

---

[2] The ultimate determination of disability is reserved to the Commissioner and "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance," Social Security Ruling 96-5p.

(treatment log showing 113 one-hour sessions from 2011 to 2015). The record does not include extensive documentation of discrete sessions, but it does include other descriptions of Zafferano's treatment. For example, on November 1, 2011, Dr. Day examined Zafferano and conducted the MCMI-3 personality test. AR 409, 412. The analysis of the test results and attendant evaluation is extensive and includes the following information:

> Axis II diagnoses reflect more habitual and maladaptive methods of relating, behaving, thinking, and feeling. MCMI-III results indicate a level of pathology characterizes the overall personality organization of Mrs. Zafferano. Defective psychic structures suggest a failure to develop adequate internal cohesion and a less than satisfactory hierarchy of coping strategies. Her foundation for effective intrapsychic regulation and socially acceptable interpersonal conduct appears deficient. She is subjected to the flux of her own enigmatic attitudes and contradictory behavior, and her psychic sense of coherence is often precarious. She has a checkered history of disappointments in her personal and family relationships. Deficits in her social attainments are notable as well as a tendency to precipitate self-defeating vicious circles. Earlier aspirations have resulted in frustrating setbacks and efforts to achieve a consistent niche in life have been difficult. Although she can function on a satisfactory basis at times, she also experiences periods of marked emotional, cognitive, and behavioral dysfunction.

AR 412-13. Considering the foregoing, Dr. Day opined that "the patient is experiencing a severe mental disorder." AR 412. Additionally, Dr. Day completed a mental assessment of Zafferano's ability to do work-related activities, which indicated a likelihood of future problems. AR 478-82. This assessment was a checklist, but that does not preclude it from carrying weight. *See Trevizo*, 871 F.3d 677 n.4 (concluding that "the ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a "check-the-box" form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers").

Likewise, the ALJ's third and final rationale—Dr. Day's opinions are inconsistent with the rest of the medical record, which is further demonstrated by the "fact [claimant] was capable of work and did work in 2013"—is wanting. AR 31. Aside from medical records from Dr. Day, the majority of Zafferano's records come from Hillside Internal Medicine and Physician Assistant

("PA-C") Nickolas Dobler.[3] PA-C Dobler's records persistently—over the course of ten years, AR 473—paint Zafferano as an individual significantly hindered by nonexertional limitations:

- On April 28, 2011, Zafferano had a follow-up appointment for a recent weeklong hospitalization for treatment of a depressive episode with suicidal ideation. The episode was precipitated, at least in part, by a temporary increase in work from part time to full time. AR 385.
- On September 28, 2012, PA-C Dobler noted Zafferano had been experiencing a "situational crisis" and much stress. AR 363.
- On May 9, 2014, PA-C Dobler noted Zafferano was increasingly depressed and suicidal, with extreme fatigue. AR 464.
- On June 5, 2014, PA-C Dobler noted Zafferano was "continually depressed and feeling very vegetative." AR 459.
- On June 22, 2015, PA-C Dobler completed a medical source statement in which he noted that Zafferano had bipolar disorder and anxiety disorder, in addition to a history of alcohol abuse. AR 473. Zafferano was compliant with her prescriptions for multiple mental health medications and her symptoms were stable. AR 473. However, Dobler opined that Zafferano was currently incapable of working. AR 477. He opined that Zafferano was unable to handle work stress. AR 475. Specifically, Dobler opined that Zafferano had no ability to deal with work stress, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. AR 476. Dobler noted that Zafferano had been able to work for short periods over the past few years, but that these attempts to work tended to trigger worsening symptoms of depression and relapses on alcohol. AR 477.

Considering the extensive records from PA-C Dobler, the ALJ erred by determining that Dr. Day's opinion was inconsistent with the medical record.

Furthermore, the ALJ's reliance on Zafferano's recent work history as a basis to discount Dr. Day's opinion is misplaced. As documented in Dr. Day's medical records, Zafferano did indeed work after the alleged onset date of her disability, but the work resulted in a deterioration of her condition:

> I have continued to treat Mrs. Zafferano since the November 2011 report on a weekly or bi-weekly basis. Mrs. Zafferano returned to work on a part time basis in 2012. Her employer asked her to

---

[3] The Social Security Administration does not consider physician assistants, such as Dobler, to be an "acceptable medical source," 20 C.F.R. § 404.1502, but their opinions may nonetheless be considered in the disability-evaluation process, *see* 20 C.F.R. § 404.1513(a)(3); SSR 06-03p at *3, 2006 WL 2329939 (S.S.A.) (Aug. 9, 2006) ("[I]nformation from [physician assistants] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

9

> increase her hours due [to] the employer's need. Mrs. Zafferano
> did this but suffered an increase in symptoms related to Major
> Depressive Disorder, Recurrent, Severe without psychotic features,
> chronic. These symptoms include increased hypersomnia,
> psychomotor retardation, fatigue, energy loss, feelings of
> worthlessness, excessive feelings of guilt, diminished ability to
> concentrate, and recurrent thoughts of suicide with one
> unsuccessful attempt using sleeping medication. Mrs. Zafferano
> was not hospitalized for this attempt when she signed a contract
> agreeing to contact family or her therapist if she felt suicidal again.

AR 407.

In conclusion, the ALJ committed reversible legal error by failing to consider factors laid out in 20 C.F.R. § 404.1527(c) and failing to reject Dr. Day's contradicted opinion for "specific and legitimate" reasons. *See Lester*, 81 F.3d at 830. Given that the court has found that the ALJ committed reversible legal error, we need not reach Zafferano's second and third arguments.

### B. Harmless Error Analysis

Having found that the ALJ erred in considering the medical-opinion testimony in the record, the court must now consider whether the ALJ's errors are harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In assessing whether an error is harmless, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

The ALJ's errors are not harmless. Had Dr. Day's medical opinion been fully credited, a different disability determination could well have been reached. Dr. Day opined that "the patient is experiencing a severe mental disorder," AR 412, and that Zafferano should not return to work because the attendant stress exacerbates her symptoms and leads to hospitalization, *see* AR 375, 408, 478, 507, 511-12. Crediting this opinion could have changed the ALJ's opinion.

### C. Appropriate Remedy

Having concluded that the ALJ committed legal error and that the error was not harmless, the court must determine the appropriate remedy. "[T]he proper course, except in rare

10

circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). This "ordinary remand rule" respects the Commissioner's role in developing the factual record and helps guard against the displacement of administrative judgment by judicial decree. *See Treichler*, 775 F.3d at 1099-100. When an ALJ makes a legal error but there are ambiguities or outstanding issues in the record, the proper approach is to remand for further proceedings, not to apply the "credit-as-true" rule. *See id.* at 1105.

The "credit-as-true" rule "permits, but does not require, a direct award of benefits on review where the ALJ has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Leon v. Berryhill*, 874 F.3d 1130, 1131 (9th Cir. 2017). Courts most frequently apply the rule to credit a claimant's testimony regarding the severity of his or her symptoms, but medical opinions may also be credited as true. *Id.*; *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989) (extending the "credit-as-true" rule to medical opinions). Once a statement is credited as true, "the court should then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Leon*, 874 F.3d at 1131-32 (internal quotation marks omitted). "Then, and only under these circumstances," may an award of benefits be appropriate. *Leon*, 874 F.3d at 1131. In fact, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id.* at 1132.

For this court to depart from the ordinary remand rule and award benefits under the credit-as-true rule, three requirements must be met. *Garrison*, 759 F.3d at 1019-21. First, the court must determine that the ALJ committed legal error, such as by failing to provide legally sufficient reasons for rejecting certain evidence. *See Dominguez*, 808 F.3d at 407. Second, the court must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In making this determination, the court reviews the record as a whole and asks whether there are conflicts, ambiguities, or gaps in the record such that essential factual issues have not been resolved. *See Dominguez*, 808 F.3d at

11

407 (citation omitted). Where there are outstanding issues that require resolution, the proper approach is to remand the case to the agency for further proceedings. *See Treichler*, 775 F.3d at 1101, 1105.

Third, and finally, if the court determines that the record has been fully developed and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). "If so, the district court may exercise its discretion to remand the case for an award of benefits." *Id.* However, even when the requirements of the credit-as-true rule are satisfied, district courts retain flexibility to remand for further proceedings when the record as a whole creates "serious doubt" as to whether the claimant is disabled. *Id.* at 1021.

Here, the court cannot find that the third credit-as-true requirement is satisfied for two reasons. First, Zafferano engaged in substantial gainful activity in 2012 or 2013. AR 22-23. The ALJ acknowledged this at step one, but nonetheless proceeded with the sequential analysis of her claim "in order to give her the benefit of any doubt." AR 22-23. Given that there was a possible alternative basis for issuing an adverse decision, the court is unwilling to conclude that "the ALJ would be required to find the claimant disabled on remand." *Dominguez*, 808 F.3d at 407 (quoting *Garrison*, 759 F.3d at 1020). Second, the court cannot conclude that "the record, taken as a whole, leaves *not the slightest uncertainty* as to the outcome of [the] proceeding." *Leon*, 874 F.3d at 1131-32 (internal quotation marks omitted) (emphasis added). Much of the evidence points in different directions. On one hand, the opinions of Dr. Day and PA-C Dobler indicate that Zafferano suffers from severe limitations that preclude her from working. AR 375, 408, 475-78, 507, 511-12. On the other hand, evidence in the administrative record indicates that Zafferano was able to work part time after the alleged onset date of her disability, AR 22-23, and psychiatrist Miriam Sherman, M.D., a clinical professor of psychiatry who had testified as an expert at Social Security disability hearings since 2006, reviewed Zafferano's record and testified that Zafferano met the Social Security standard of disability when abusing alcohol, but that if she

abstained from alcohol, she would be able to work, AR 24, 501.  The court will remand this case for resolution of the conflict.

### VII.     CONCLUSION AND ORDER

Plaintiff Linda Ann Zafferano's appeal from the administrative decision of the Commissioner of Social Security is granted.  This case is remanded for further proceedings consistent with this order.  The clerk of court is directed to (1) enter judgment in favor of plaintiff Linda Ann Zafferano and against defendant Commissioner of Social Security and (2) close this case.

IT IS SO ORDERED.

Dated:     December 13, 2018

_____
UNITED STATES MAGISTRATE JUDGE